UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **EMILY BROOKER**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| The Governors of Missouri State University, | ) |
| **MICHAEL L. FRANKS, MARY SHEID,** | ) |
| **JAMES BUFORD, MICHAEL DUGGAN,** | ) |
| **JOHN L. WINSTON, BRIAN HAMMONS,** | ) |
| **PHYLLIS WASHINGTON,** and **CATHY** | ) |
| **SMITH** all in their official capacities; | ) Case No.: 06-CV-3432 |
| **MICHAEL T. NIETZEL**, individually and in | ) |
| his official capacity as president of the | ) |
| Missouri State University System; **LOLA M.** | ) |
| **BUTLER**, individually and in her official | ) |
| capacity; **ANNE B. SUMMERS**, individually | ) |
| and in her official capacity; **FRANK G.** | ) |
| **KAUFFMAN**, individually and in his official | ) |
| capacity; and **CATHERINE L. BOLING**, | ) |
| individually and in her official capacity, | ) |
| | ) |
| Defendants. | ) |

### VERIFIED COMPLAINT

Plaintiff Emily Brooker, by and through counsel, and for her Complaint against Defendants Michael L. Franks, Mary Sheid, James Buford, Michael Duggan, John L. Winston, Brian Hammons, Phyllis Washington, and Cathy Smith, all in their official capacities as members of the Board of Governors of Missouri State University; Michael T. Nietzel, individually and in his official capacity as president of the Missouri State University System; Lola M. Butler, Anne B. Summers, Frank G. Kauffman, and Catherine L. Boling, all individually and in their official capacities as faculty and staff of the Missouri State University School of Social Work, states as follows:

## INTRODUCTION

1.    Missouri State University ("MSU" or the "University") is one of several statefunded institutions of higher education in southwest Missouri. Many men and women, young and old, pursue academic studies at MSU in order to equip themselves with the skills necessary to pursue their career and life goals. Emily Brooker was one of these students. Ms. Brooker enrolled in MSU in September 2002 to obtain an undergraduate degree. She successfully completed her Bachelor of Social Work degree on May 19, 2006. But MSU officials tainted Ms. Brooker's undergraduate experience in the School of Social Work by punishing her for freely expressing her ideas.

2.    Although Ms. Brooker entered MSU expecting that college would provide her with the opportunity to engage in rigorous academic discourse and pursue greater understanding of life's deepest questions, what she found was much different. Instead of encouraging debate and discourse, Defendants, by policy and practice, stifled and silenced Ms. Brooker's speech and exercise of her religious beliefs because they fell outside the orthodoxy of the School of Social Work and MSU. The Defendants engaged in indoctrination, not education. And when Ms. Brooker took an independent and brave stance on particular issues, Defendants trumped up grievance charges in retaliation to her protected speech, failed to give her adequate notice of the charges, forced her to speak in favor of matters that are vile to her religious beliefs, and treated her differently than similarly-situated students. As a result, Defendants engaged in unlawful retaliation against Ms. Brooker's protected expression, deprived her of equal protection and due process, and prevented her from full membership in MSU's academic community.

## JURISDICTION AND VENUE

3.    This civil rights action raises federal questions under the United States

Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

4. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

5. This Court has supplemental jurisdiction over the state law claims made herein pursuant to 28 U.S.C. § 1367.

6. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. § 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys fees under 42 U.S.C. § 1988.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and LR 3.2 because the Defendants reside in this district and all of the acts described in this Complaint occurred in this district.

## PLAINTIFF

8. Plaintiff Emily Brooker was an undergraduate student at Missouri State University from September 2002 until May 19, 2006. Ms. Brooker is also a Christian and holds sincerely-held religious beliefs on issues of morality.

## DEFENDANTS

9. Defendant Michael L. Franks is President of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in his official capacity.

10. Defendant Mary Sheid is a member of the Board of Governors of Missouri State

University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in her official capacity.

11.     Defendant James Buford is a member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in his official capacity.

12.     Defendant Michael Duggan is a member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in his official capacity.

13.     Defendant John L. Winston is a member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in his official capacity.

14.     Defendant Brian Hammons is a member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in his official capacity.

15.     Defendant Phyllis Washington is a member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in her official capacity.

16.     Defendant Cathy Smith is a member of the Board of Governors of Missouri State University, a public university organized and existing under the laws of the State of Missouri; is responsible for overseeing university administration, including the policies and practices contained herein; and is sued in her official capacity.

17.     Defendant Michael T. Nietzel is the President of Missouri State University, a public university organized and existing under the laws of the State of Missouri, is responsible for overseeing campus administration, and is sued both in his official and individual capacities.

18.     Defendant Lola M. Butler is the former Director of the School of Social Work, is an Associate Professor of Social Work at Missouri State University, and is sued both in her official and individual capacities.

19.     Defendant Anne B. Summers is the Bachelor of Social Work Program Director and Associate Professor of Social Work at Missouri State University and is sued both in her official and individual capacities.

20.     Defendant Frank G. Kauffman is an Assistant Professor of Social Work at Missouri State University, taught two of Ms. Brooker's required undergraduate courses, and is sued both in his official and individual capacities.

21.     Defendant Catherine L. Boling is the Director of Field Education and Professor of Social Work at Missouri State University and is sued both in her official and individual capacities.

## FACTUAL BACKGROUND

### A. Discrimination Against Brooker's Religious Beliefs

22.     In September 2002, Emily Brooker began attending Missouri State University to obtain her bachelor of social work degree. As did many students, Ms. Brooker registered for and completed a wide range of classes in the School of Social Work and other MSU colleges and

departments. Most of Ms. Brooker's professors taught classes in a professional and academic environment, but that was not the case in certain School of Social Work classes.

23. During the spring 2005 semester, Ms. Brooker registered for SWK 309 Social Welfare Policy and Services I (hereinafter "Policy I"). Defendant Frank G. Kauffman taught Ms. Brooker's class.

24. Policy I is a required course, meaning MSU students must take this course in order to graduate with a bachelor of social work degree.

25. According to MSU's 2005–06 Undergraduate Catalog, Policy I is described as follows:

This course examines the historical development and philosophical orientation of social welfare policy and services in the United States as well as introduces students to the development of social work as a profession. The course focuses on selected major social welfare policies and programs and the philosophical, economic, social and political forces that shape their development.

A copy of the MSU 2005–06 Undergraduate Catalog for the bachelor of social work degree is attached to this Complaint as Exhibit "A."

26. During the semester, instead of staying on topic and teaching the Policy I curriculum, Defendant Kauffman routinely engaged in leftist diatribes denigrating President Bush and the federal government. Defendant Kauffman stated that he is a "liberal," and made statements that indicated that social work is a "liberal" profession. Because Defendant Kauffman's statements had nothing to do with the topic of the course, Ms. Brooker questioned his statements by voicing her opposition in class. Other students also vocally questioned Defendant Kauffman's statements.

27. As a result of her vocal disagreement with Defendant Kauffman, Ms. Brooker received a "C" grade in Policy I. Upon information and belief, when Ms. Brooker approached Defendant Kauffman about the grade, he claimed she received fewer points on participation, which

led to her "C" grade, because she was tardy and exhibited unprofessional behavior in class.

28.     Defendant Kauffman's Policy I syllabus did not state that participation points included the elements of tardiness or unprofessional behavior.

29.     MSU provides students with a "Grade Appeals" process. Pursuant to the "Grade Appeals" policy:

> Students who have reasons which can be substantiated to request grade changes must:
>
> 1. write a formal letter to the instructor . . . requesting a re-evaluation of their performance in the course; and
>
> 2. provide the following information:  name and social security number;  course number, title, and section; semester and year taken; name of instructor; and a clear statement of the grade change request and reasons which justify the request.

If a professor denies a grade appeal, the student may appeal the negative decision by presenting "the appeal...to the faculty member's department head."  A copy of Defendants' Grade Appeals policy is attached to this Complaint as Exhibit "B."

30.     Ms. Brooker appealed her Policy I "C" grade pursuant to MSU's appeal process.

31.     She appealed to Defendant Kauffman to raise her grade due to her superb academic performance.  However, Defendant Kauffman wrote Ms. Brooker a harsh e-mail stating that his professional opinion set the standards in the class.  Defendant Kauffman denied her appeal.

32.     Ms. Brooker then appealed to the Social Work Department chairperson, who granted her appeal and gave her a "B" grade in the class on March 10, 2006, more than one year after submitting her appeal to the Department.

33.     During the fall 2005 semester, Ms. Brooker enrolled in the next policy course in the academic sequence, SWK 409 Social Welfare Policy and Services II (hereinafter "Policy II"). Policy II, like Policy I, is a required course for graduation from the bachelor of social work degree.

34.     According to MSU's 2005–06 Undergraduate Catalog, Policy II is described as follows: "An introduction to the analytic, interactional, value clarification and political strategies necessary for policy analysis and implementation." *See* Complaint Exhibit "A."

35.     Defendant Kauffman taught Ms. Brooker's Policy II class.

36.     As a part of the Policy II course curriculum, Defendant Kauffman required the students to engage in a semester-long social work advocacy project. On information and belief, Defendant Kauffman announced this project at the beginning of the course and instructed students to form small groups. Defendant Kauffman instructed each group to select a project of their own choosing, so long as it engaged social work advocacy. Ms. Brooker joined a group that decided to conduct a project on homelessness.

37.     On information and belief, a few weeks into the Policy II course, Defendant Kauffman brought a guest from PROMO to speak to the class. PROMO is an organization of advocates of homosexual behavior located in the State of Missouri. Ms. Brooker was in class that day and listened to the speaker.

38.     After the speaker, on information and belief, Defendant Kauffman suggested that instead of allowing each class group to choose their own project on social work advocacy, the whole class should work on a project advocating homosexual foster homes and adoption.

39.     On information and belief, during the next class, Defendant Kauffman stated that the class would learn about the homosexual foster homes and adoption issue, attend a town hall meeting discussing the issue, write a reaction paper, and then, as a class, write a letter advocating in favor of homosexual adoption to the State of Missouri legislature. Defendant Kauffman stated the letter would be sent on MSU letterhead and signed by each student.

40.     Upon information and belief, after proposing this idea, Defendant Kauffman

8

asked each student if he/she agreed with the project idea. Ms. Brooker stated her disagreement with the topic because it conflicted with her sincerely-held Christian beliefs. Another student stated the same. However, Ms. Brooker told Defendant Kauffman that she would consider the project idea and let him know her final decision.

41.     After class, Ms. Brooker and another student asked Ms. Brooker's undergraduate social work advisor, Dr. Joan McClennen, how to inform Defendant Kauffman that they did not want to participate in signing a letter in support of homosexual adoption assignment because of their religious disagreement with the issue.

42.     Upon information and belief, after her meeting with Ms. Brooker, Dr. McClennen spoke with Defendant Kauffman about respecting the beliefs and opinions of all students in his class.

43.     Later that week, Ms. Brooker informed Defendant Kauffman that she was willing to learn about the population by doing research and attending the Town Hall meeting, but she did not want to advocate in favor of the population. During the next several weeks, Ms. Brooker participated in the research and Town Hall meeting.

44.     After several weeks, Defendant Kauffman brought a draft of the letter advocating homosexual foster homes and adoption to the class. He expected the students to use this draft, effectively dictating the students' position on the controversial subject. Ms. Brooker participated in that class by helping to brainstorm words that made some statements clearer and more powerful.    She attempted to promote fostering and adopting children generally, without promoting homosexual foster homes and adoption. At the end of the class, Ms. Brooker and another student asked Defendant Kauffman if they could schedule a meeting with him to discuss the advocacy letter assignment. Defendant Kauffman refused to meet with them after class, stating that they would discuss the issue in class. The students stated they did not want to discuss

the issue in class.

45.     Again, Ms. Brooker informed Defendant Kauffman that she was willing to learn about the issue, attend a town hall meeting discussing it, and write the reaction paper. However, she was unwilling to sign an advocacy letter promoting homosexual foster homes and adoption because it conflicted with her religious beliefs. Other students did not want to sign the letter either.

46.     Ms. Brooker asked Defendant Kauffman if he would allow her to write and sign a letter on an alternative issue. Defendant Kauffman at first said no but then agreed that she could write an alternate letter.

47.     Several weeks later, Defendant Kauffman entered the room and announced that all previous work on the syllabus was being thrown out. He issued an addendum to the syllabus, and he stated that each student had to complete an individual advocacy project and stop work on the group homosexual foster home and adoption advocacy project. One option was for the students to continue working individually on the homosexual foster home and adoption advocacy project. Upon information and belief, he stated that some students had gone behind his back to talk to another professor about the class project on homosexual adoption. Defendant Kauffman angrily left the classroom and did not hold class that day.

48.     Ms. Brooker completed an individual advocacy project on Missouri's Head Start program.

49.     Approximately one month after these incidents, on the Friday before finals, Ms. Brooker received notification by phone that she had violated the School of Social Work's Standards of Essential Functioning in Social Work Education ("SEF") and was accused of a Level 3 Grievance.

50.     On information and belief, Defendants Franks, Sheid, Buford, Duggan, Winston, Hammons, Washington, Smith, Nietzel, Butler, Summers, Kauffman, and Boling are responsible

for the creation and implementation of SEF policy at MSU.

51. MSU's School of Social Work has three levels of review when reviewing a student's academic performance. The Level 3 charge is the worst charge an individual can bring against a student and is usually reserved for circumstances in which a Level 1 and 2 charge were ineffective. Until Ms. Brooker received notification, MSU never issued her any grievance charges for violating the SEF.

52. The School of Social Work's SEF states, in relevant part:

The level of review depends on the potential severity of the concern.

Level I

A Level I review involves a faculty member and a student. When a faculty member has concerns about a student enrolled in the social work program meeting any of the criteria, whether related to professional behavior or scholastic performance, the faculty member will:

1. Discuss those concerns directly with the student and seek to work with the student to resolve the difficulties

2. Apprise the appropriate BSW, MSW, Joplin Program, or Field Director of the concerns in order to identify potential patterns and issues related to the student

3. Document dates and content of meetings with students. If a problem arises in the field, the agency-based field instructor will discuss concerns directly with the student and with the faculty liaison. It is the responsibility of the faculty liaison to apprise the appropriate directors/coordinator of the concerns.

In many instances, meetings between faculty and students resolve the concerns and do not necessarily lead to further reviews.

Level II

A Level 2 review involves the faculty member, student, and program director/coordinator. Faculty and program directors/coordinator will meet with the student when concerns have not been resolved at Level 1. If a problem arises in the field, the agency-based field instructor, faculty liaison, and field director will conduct the review with the student.

In this information gathering process, the program director will determine the

nature of the concern and gather sufficient information to develop a plan to address that concern, if one is needed. No further action may be required, or the student may be asked, in writing, to modify his or her behavior and/or seek appropriate help. This process is designed to assist students in dealing with identified concerns that have an impact on their performance.

The BSW, MSW, and/or Field Director, will assess the nature of these concerns with appropriate faculty, consult with the Advisor, and with the Program Director, maintain documentation, and decide if it is necessary to conduct a more comprehensive review, pursuant to Level 3.

Level III

A Level 3 review involves the faculty member, student, program coordinator, and faculty who have had direct experience with the student in the classroom or field. Generally, this level of review is called when problematic patterns are identified with students, or when the issues are serious enough to require formal consultation with other faculty and the student.

More often, a Level 3 review is conducted when concerns have not been resolved in prior reviews; when issues relate to a student not meeting the performance criteria (typically involving professional or ethical behaviors); or when the student is being considered for withdrawal or discontinuance in the program.

Usually, a Level 3 review is sufficient to deal with student performance and is the last decision-making step in the review process at the School of Social Work.

When a Level 3 review is called, the appropriate program director will convene a meeting with the appropriate faculty and the student to gather information, determine the nature of the problem (if one is confirmed to exist), and identify alternatives for its remediation. Appropriate faculty to be involved in a review will include but are not limited to those who have direct knowledge of and experience with the student.

The student will be notified in writing of the concerns and meeting date, with sufficient time to prepare for and attend the meeting. After the review meeting has occurred, the program director or coordinator will consult with the Director of the School of Social Work to discuss the problem situation and make recommendations regarding the student. Based on the review conference with the Director and an objective assessment of the information provided, and the BSW Program Director (if an undergraduate student) or the MSW Program Director (if a graduate student) will inform the student of the decisions, which can include one or more of the following actions:

1. Continue the student in the program with no conditions.

In these situations, the concern has been addressed and no further action by the student or program is required.

2. Establish formal conditions for the student's continuance in the program.

   In these situations, specific conditions must be met in order for the student to remain in the program. Actions may include establishing goals, a plan, a timeline, and appropriate monitoring; providing mentoring and support; placing the student on probation and monitoring the student during the probationary period; referring the student to counseling and/or advising services; allowing the student to follow a reduced course load; delay entry to the field practicum; or requiring the student to withdraw from the program with the option of reapplying.

3. Consult with and/or refer to the Dean of Student Services or the Academic Integrity Council.

   In some instances, depending on the nature of the problem, the University's Academic Integrity Council in the Office of Academic Affairs or the Office of the Dean of Student Services may be consulted. If a referral is made to either of these Offices, after consultation, the student will be notified in writing about the nature of the concern and that the referral is taking place. A situation that may result in referral to the Academic Integrity Council is academic dishonesty. Situations which may result in referral to the Dean of Student Services may include hazing, racial or sexual harassment, possession or use of firearms or other weapons on University property, damage or destruction of University property, and conduct that endangers the health or safety of any University student, employee, or campus visitor.

4. Counsel the student to change major/degree program and/or discontinue the student in the program.

   In some situations, it will be recommended that the student no longer continue in the social work program. The student will be counseled to voluntarily change majors or degree programs. If that does not occur, the student will be provided with documentation regarding the specific reasons for his or her dismissal and the conditions, if any, under which he or she may re-apply.

In any Level 3 review, there must be clear, concise documentation of the problem areas as well as verification that these concerns have been discussed with the student and attempted to be ameliorated, where appropriate. Students must be notified of the decision in writing within ten calendar days of the review. It is the responsibility of the program director/coordinator to communicate the decision to the student.

A copy of MSU's "Standards and Essential Functions for Social Work Education" is attached to

this Complaint as Exhibit "C."

53.     As stated above, "a Level 3 review is conducted when concerns have not been resolved in prior reviews." Ms. Brooker was never subject to prior reviews.

54.     Ms. Brooker never received written notice of the Level 3 grievances warranting the hearing. However, she received a phone call on Friday, December 9, 2005, requesting her presence at the hearing on the Friday after her fall 2005 semester finals, December 16, 2005. Because Ms. Brooker was studying for finals, she did not have "sufficient time" to prepare for the hearing.

55.     The phone call notice indicated that the Level 3 hearing would be held by MSU officials on the Friday after finals, December 16, 2005. The notice also stated that Defendant Butler, Defendant Kauffman, Defendant Summers, Dr. Mary Ann Jennings, Dr. Joan McClennen (Ms. Brooker's advisor), Professor Kelli Farmer, and Defendant Boling would be present.

56.     Ms. Brooker requested that her parents be allowed to attend the hearing as witnesses. Defendant Summers informed Ms. Brooker that she would e-mail her the night before the hearing (Thursday night) about whether her parents could attend. However, Defendant Summers did not send the e-mail until after Ms. Brooker left for the hearing Friday morning. Because of this delay by Defendant Summers, Ms. Brooker's parents assumed they could attend. However, Defendant Summers denied Ms. Brooker's request to have her parents present. Ms. Brooker then asked to tape record the hearing, but the faculty refused. Ms. Brooker also asked to have a non-faculty advocate present at the hearing to speak on her behalf, but the faculty refused. The faculty claimed that Dr. McClennen was Ms. Brooker's advocate at the meeting. A copy of Defendant Summers' December 16, 2005, e-mail to Ms. Brooker is attached to this Complaint as Exhibit "D."

57.     On December 16, 2005, Ms. Brooker attended the hearing. Ms. Brooker was verbally told the hearing centered around three issues: (1) Ms. Brooker's grade appeals; (2) her tardiness from class; and (3) her involvement in Defendant Kauffman's class. In actuality, the purpose of the hearing was to discuss her violation of three SEF requirements: (1) 2.1.10 Diversity; (2) 2.1.11 Interpersonal Skills; and (3) 2.1.12 Professional Behavior.

58.     In violation of SEF procedure, none of the issues and concerns discussed at the hearing were addressed with Ms. Brooker before the hearing.

59.     The meeting lasted approximately two and one-half (2.5) hours. The majority of the meeting focused on Ms. Brooker's alleged "discriminatory conduct" related to not signing the homosexual adoption letter in Defendant Kauffman's class.

60.     On information and belief, Defendant Kauffman stated that Ms. Brooker resisted his instruction during class. Ms. Brooker responded by informing the faculty at the hearing that she performed all of the project activities, except signing the advocacy letter.

61.     On information and belief, Defendants asked Ms. Brooker a series of personally invasive questions criticizing her Christian beliefs. The faculty asked: "Do you [Ms. Brooker] think gays and lesbians are sinners? Do you think that I am a sinner?" The faculty, including Defendants Butler, Summers, and Kauffman, also questioned whether Ms. Brooker could assist homosexual men and women in various situations as a social worker.

62.     The faculty stated that Ms. Brooker's Christian beliefs conflicted with the National Association of Social Worker ("NASW") Code of Ethics. Upon entrance into the School of Social Work, the School required Ms. Brooker, like all students, to sign a contract stating that she will model the beliefs of NASW.

63.     The faculty, including Defendants Butler, Summers, Kauffman, and Boling,

briefly discussed Ms. Brooker's tardiness to several professors' classes.

64.     Ms. Brooker informed the faculty that Defendant Kauffman's Policy I class syllabus did not indicate that tardiness would impact her participation points. Defendant Kauffman provided no documentation of Ms. Brooker's tardiness at the hearing. This occurred because a decision about the grade appeal had not been made by Defendant Summers.

65.     Upon information and belief, no student has been charged with a Level 3 grievance for being tardy to class a few times.

66.     Upon information and belief, Ms. Brooker was not tardier than any other student in Policy II. Further, Ms. Brooker observed that approximately three (3) students were routinely absent from Defendant Kauffman's Policy II class. Upon information and belief, these students were not charged with grievances.

67.     The faculty, including Defendants Butler, Summers, Kauffman, and Boling, also briefly discussed Ms. Brooker's professionalism. They accused her of referring to one of her professors as "Jennings" instead of "Dr. Jennings" in an e-mail to Dr. Jennings and in a personal e-mail to a classmate asking for class notes. Ms. Brooker reminded Dr. Jennings that she already apologized for not addressing her properly in the e-mail to her.

68.     The faculty returned to the homosexual adoption project issue and asked Ms. Brooker whether she could mirror the School of Social Work's SEF and the NASW Code of Ethics. They demanded that she "lessen the gap" between her personal beliefs and professional obligations to these ethics codes.

69.     At the end of the hearing, the faculty, including Defendants Butler, Summers, and Boling, stated that in order to continue her degree Ms. Brooker had to write a response paper about her awareness of social work ethics. They instructed her that the paper should discuss the

difference between personal and professional beliefs and how she would "lessen the gap" between these two belief systems. They also instructed her that the paper should state that she would not discriminate against men and women engaged in homosexual behavior, that she would be willing to place children in homosexual adoptive homes, and that she would abide by the NASW Code of Ethics and the School of Social Work's SEF. A copy of Ms. Brooker's January 3, 2006, "Written Response About My Awareness" is attached to this Complaint as Exhibit "E."

70. According to SEF procedure, Ms. Brooker should have received a decision from the faculty on December 26, 2006, ten (10) calendar days after the hearing, but she did not. Instead, she was asked to attend a meeting on January 3, 2006.

71. At the January 3rd meeting, Ms. Brooker presented and discussed her paper with several faculty members. The faculty members present required Ms. Brooker to sign a contract acknowledging her responsibility to conform to the NASW Code of Ethics and SEF and outlining the professional behavior that they required her to display in the classroom and in practicum courses. Statements in the contract implied that Ms. Brooker had engaged in additional unprofessional behavior. Further, there were several contradictions in the language of the contract. Ms. Brooker's continuance in her social work degree was conditioned on this contract.

72. On or about January 18, 2006, Ms. Brooker was asked to meet with Defendants Summers and Boling and Michelle Seifert to review a rough draft of the contract. Ms. Seifert was Ms. Brooker's practicum supervisor. Later, Ms. Seifert was asked not to attend the meeting. A copy of Defendant Boling's January 3, 2006, e-mail to Michelle Seifert, Defendant Summers, and Ms. Brooker is attached to this Complaint as Exhibit "F" and a copy of Defendant Boling's January 13, 2006, e-mail to Ms. Brooker is attached to this Complaint as Exhibit "G."

73.     After the meeting on January 18, 2006, Defendant Boling sent Ms. Brooker an e-mail with a draft of the contract for her to review and sign. Defendant Boling instructed Ms. Brooker to return a signed copy of the contract by January 19, 2006, at 11:00 a.m. to the School of Social Work. Defendant Boling told Ms. Brooker to notify Defendant Summers if she could not sign the contract. A copy of Defendant Boling's January 18, 2006, e-mail to Ms. Brooker is attached to this Complaint as Exhibit "H." Again, the contract had to be signed to start the spring 2006 semester and to continue with the social work degree.

74.     Ms. Brooker signed the contract and returned it to the School of Social Work on January 19, 2006, even though she objected to the contract.

75.     One stipulation of the contract was that Ms. Brooker was to have monthly meetings with the faculty involved. However, the faculty never contacted Ms. Brooker for a meeting.

76.     Ms. Brooker graduated from MSU on May 19, 2006.

### B. The Effect of Defendants Actions on Brooker.

77.     Because of Defendants' actions in ostracizing Ms. Brooker based upon her religious beliefs, charging her with a Level 3 grievance, not following SEF procedure, and requiring her to sign a contract stating that she will forego her religious beliefs and adhere to and speak in favor of the NASW Code of Ethics and SEF, Ms. Brooker was denied the ability to speak freely on issues of religious importance, was retaliated against for her protected expression, was forced to speak in favor of ideas contrary to her religious beliefs, was unable to exercise her religious beliefs and practices freely, was treated differently than other social work students, and was denied due process, resulting in severe damage to her professional reputation.

78.     The Level 3 grievance on Ms. Brooker's academic record tarnished her grades,

disabled her from graduating with honors, and impeded her entrance into a master's of social work degree program.

79. As a result of Defendants illegal actions, Ms. Brooker will be forced to pursue a graduate degree in social work at another university, thus incurring additional costs due to the higher tuition rates and the requirement that she move from Springfield, Missouri, to pursue such a degree.

80. The intentional and knowing actions of Defendants Franks, Sheid, Buford, Duggan, Winston, Hammons, Washington, Smith, Nietzel, Butler, Summers, Kauffman, and Boling had a chilling effect on Ms. Brooker's rights to express her theories, ideas, and religious beliefs freely and openly in a manner protected by the Constitution of the United States. By engaging in these actions, the Defendants have violated rights guaranteed to Ms. Brooker by the First and Fourteenth Amendments to the Constitution of the United States. These rights and laws are clearly established by governing legal authority, and Defendants' violations are knowing, intentional, and without justification. So long as these actions continue to go unpunished, the Defendants are causing ongoing and irreparable harm to the Ms. Brooker.

81. The intentional and knowing actions of Defendants Franks, Sheid, Buford, Duggan, Winston, Hammons, Washington, Smith, Nietzel, Butler, Summers, Kauffman, and Boling constitute illegal retaliation against Ms. Brooker for engaging in protected speech when she refused to sign an advocacy letter. These actions are illegal under the Free Speech Clause of the First Amendment. These rights are clearly established by governing legal authority, and Defendants' violations are knowing, intentional, and without justification. So long as these actions continue to go unpunished, the Defendants are causing ongoing and irreparable harm to Ms. Brooker.

82. The intentional and knowing actions of Defendants Franks, Sheid, Buford,

Duggan, Winston, Hammons, Washington, Smith, Nietzel, Butler, Summers, Kauffman, and Boling in forcing Ms. Brooker to speak in support of disfavored subjects squelched her rights to engage in appropriate discussions of her theories, ideas, and political and/or religious beliefs freely and openly. By engaging in this conduct, Defendants violated rights guaranteed to Ms. Brooker by the First and Fourteenth Amendments to the Constitution of the United States of America. These rights are clearly established by governing legal authority, and Defendants' violations are knowing, intentional, and without justification. So long as Defendants' actions go unpunished, Ms. Brooker is unable to freely speak as a social worker.

83. The intentional and knowing actions of Defendants Franks, Sheid, Buford, Duggan, Winston, Hammons, Washington, Smith, Nietzel, Butler, Summers, Kauffman, and Boling in forcing Ms. Brooker to sign a contract stating that she would change her religious beliefs to conform to social work standards as a condition of her continued enrollment in the School of Social Work, squelched her rights to engage in appropriate discussions of her theories, ideas, and political and/or religious beliefs freely and openly. By engaging in this conduct, Defendants violated rights guaranteed to Ms. Brooker by the First and Fourteenth Amendments to the Constitution of the United States of America. These rights are clearly established by governing legal authority, and Defendants' violations are knowing, intentional, and without justification. So long as Defendants' actions go unpunished, Ms. Brooker is unable to freely speak as a social worker.

84. The intentional and knowing actions of Defendants Franks, Sheid, Buford, Duggan, Winston, Hammons, Washington, Smith, Nietzel, Butler, Summers, Kauffman, and Boling constitute illegal discrimination against Ms. Brooker for exercising her religious beliefs when she refused to sign an advocacy letter and singled her out for disfavored treatment by filing

grievance charges against her. These actions are illegal under the Free Exercise Clause of the First Amendment to the Constitution of the United States of America. These rights are clearly established by governing legal authority, and Defendants' violations are knowing, intentional, and without justification. So long as these actions continue to go unpunished, the Defendants are causing ongoing and irreparable harm to Ms. Brooker.

85.    The intentional and knowing actions of Defendants Franks, Sheid, Buford, Duggan, Winston, Hammons, Washington, Smith, Nietzel, Butler, Summers, Kauffman, and Boling in singling Ms. Brooker out for disfavored treatment by filing grievance charges against her, discriminated against her because of her status as a Christian and her Christian beliefs. These actions are unconstitutional under the Equal Protection Clause of the Fourteenth Amendment. These rights are clearly established by governing legal authority, and Defendants' violations are knowing, intentional, and without justification. So long as these actions continue to go unpunished, the Defendants are causing ongoing and irreparable harm to Ms. Brooker.

86.    The intentional and knowing actions of Defendants Franks, Sheid, Buford, Duggan, Winston, Hammons, Washington, Smith, Nietzel, Butler, Summers, Kauffman, and Boling in failing to abide by MSU's Standards of Essential Functioning policies when charging Ms. Brooker with a grievance violation deprived her of her right to procedural due process. By engaging in this conduct, Defendants violated rights guaranteed to Ms. Brooker by the Fourteenth Amendment to the Constitution of the United States of America. These rights are clearly established by governing legal authority, and Defendants' violations are knowing, intentional, and without justification. So long as these actions continue to go unpunished, the Defendants are causing ongoing and irreparable harm to Ms. Brooker.

87.    The intentional and knowing actions of Defendants Franks, Sheid, Buford,

Duggan, Winston, Hammons, Washington, Smith, Nietzel, Butler, Summers, Kauffman, and Boling constitute illegal discrimination against Ms. Brooker for exercising her religious beliefs when she refused to sign an advocacy letter and singled her out for disfavored treatment by filing grievance charges against her. These actions are illegal under Missouri's Religious Freedom Restoration Act, Mo. Stat. Ann. §§ 1.302 & 307. These rights are clearly established by governing legal authority, and Defendants' violations are knowing, intentional, and without justification. So long as these actions continue to go unpunished, the Defendants are causing ongoing and irreparable harm to Ms. Brooker.

## FIRST CAUSE OF ACTION

### Violation of Plaintiff's First Amendment Right
### to Freedom of Expression (42 U.S.C. § 1983)

88.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

89.     By charging Plaintiff with a Level 3 grievance, requiring her to sign a contract abandoning her rights to freedom of thought, speech, religion, and association, and denigrating her personal and professional abilities, among other things, Defendants by policy and practice have deprived Plaintiff of her ability to freely express her ideas on issues of religious and political concern at MSU and in the social work profession.

90.     Defendants, acting under color of state law, and according to policy and practice, have explicitly and implicitly discriminated on the basis of viewpoint and deprived Plaintiff of her clearly established rights to freedom of speech and expression secured by the First Amendment to the United States Constitution.

91.     Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. She, therefore, is entitled to an award of monetary damages, including punitive damages, and equitable relief.

92.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including her reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### Violation of Plaintiff's First Amendment Right to Freedom of Expression
### First Amendment Retaliation (42 U.S.C. § 1983)

93.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

94.     By charging Plaintiff with a Level 3 grievance, requiring her to sign a contract abandoning her rights to freedom of thought, speech, religion, and association, and denigrating her personal and professional abilities, among other things, Defendants by policy and practice retaliated against Plaintiff for expressing her religious beliefs and objections to a project in which she was required to advocate a repugnant position to the Missouri state legislature.

95.     Defendants, acting under color of state law, and according to policy and practice, have engaged in actions that are retaliatory and have therefore deprived Plaintiff of her clearly established rights to freedom of speech and expression guaranteed by the First Amendment to the United States Constitution.

96.     Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm.  She, therefore, is entitled to an award of monetary damages, including punitive damages, and equitable relief.

97.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including her reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

### Violation of Plaintiff's First Amendment Right to Freedom of Expression
### Compelled Speech (42 U.S.C. § 1983)

98. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

99. By charging Plaintiff with a Level 3 grievance, requiring her to sign a contract that states she must forego her religious beliefs and adopt the preferred beliefs of the NASW, and selecting the beliefs she should espouse in her social work education, among other things, Defendants by policy and practice compelled Plaintiff to express ideas that are contrary to her religious and political beliefs.

100. Defendants, acting under color of state law, and according to policy and practice, compelled Plaintiff to advocate and speak in favor of ideas which are not her own, thereby depriving Plaintiff of her clearly established rights to freedom of speech and expression secured by the First Amendment to the United States Constitution.

101. Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. She, therefore, is entitled to an award of monetary damages, including punitive damages, and equitable relief.

102. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including her reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

### Violation of Plaintiff's First Amendment Right to Freedom of Expression
### Unconstitutional Conditions Doctrine (42 U.S.C. § 1983)

103. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

104. By charging Plaintiff with a Level 3 grievance, requiring her to sign a contract

abandoning her rights to freedom of thought, speech, religion, and association, and conditioning her continued participation in the bachelor of social work degree program on her signing the contract, among other things, Defendants by policy and practice have deprived Plaintiff of her ability to freely express her ideas on issues of religious and political concern at MSU and in the social work profession.

105.    Defendants, acting under color of state law, and according to policy and practice, placed unconstitutional conditions on Plaintiff's continuance in the bachelor of social work program and deprived Plaintiff of her clearly established rights to freedom of speech and expression secured by the First Amendment to the United States Constitution.

106.    Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. She, therefore, is entitled to an award of monetary damages, including punitive damages, and equitable relief.

107.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including her reasonable attorneys' fees.

### FIFTH CAUSE OF ACTION

### Violation of Plaintiff's First Amendment Right to Free Exercise of Religion (42 U.S.C. § 1983)

108.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

109.    By charging Plaintiff with a Level 3 grievance, requiring her to sign a contract abandoning her rights to freedom of thought, speech, religion, and association, and denigrating her personal and professional abilities, among other things, Defendants by policy and practice deprived Plaintiff of her right to free exercise of religion at MSU and in the social work profession.

110.    Defendants, acting under color of state law, and according to policy and practice,

25

have explicitly and implicitly discriminated on the basis of viewpoint and deprived Plaintiff of her clearly established right to free exercise of religion secured by the First Amendment to the United States Constitution.

111. Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. She, therefore, is entitled to an award of monetary damages, including punitive damages, and equitable relief.

112. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including her reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION

### Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection of the Law (42 U.S.C. § 1983)

113. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

114. By charging Plaintiff with a Level 3 grievance, requiring her to sign a contract abandoning her rights to freedom of thought, speech, religion, and association, denigrating her personal and professional abilities, and treating Plaintiff differently than similarly situated students because she is a Christian and because of her Christian beliefs, among other things, Defendants by policy and practice denied Plaintiff equal protection of the law because of her religious status and beliefs.

115. Defendants, acting under color of state law, and according to policy and practice, have engaged in actions that are discriminatory and have therefore deprived Plaintiff of her clearly established equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution.

116. Because of Defendants' actions, Plaintiff has suffered, and continues to suffer,

economic injury and irreparable harm. She, therefore, is entitled to an award of monetary damages, including punitive damages, and equitable relief.

117. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including her reasonable attorneys' fees.

## SEVENTH CAUSE OF ACTION

### Violation of Plaintiff's Fourteenth Amendment Right to Procedural Due Process (42 U.S.C. § 1983)

118. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

119. By failing to provide Plaintiff with adequate notice of the Level 3 hearing, failing to provide clear, concise documentation of Plaintiff's alleged Level 3 "problem," failing to verify that the faculty concerns have been addressed with the Plaintiff previous to the charge and hearing, failing to ameliorate those concerns prior to a Level 3 hearing, and failing to notify the Plaintiff of the faculty's decision ten (10) days after the hearing date, Defendants by policy and practice did not comply with the School of Social Work's procedures established in the Standards of Essential Functioning for conducting a Level 3 hearing, and thereby deprived Plaintiff of her right to procedural due process.

120. Defendants, acting under color of state law, and according to policy and practice, failed to provide Plaintiff with her clearly established right to procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution.

121. Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. She, therefore, is entitled to an award of monetary damages, including punitive damages, and equitable relief.

122. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of

monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including her reasonable attorneys' fees.

## EIGHTH CAUSE OF ACTION

### Violation of Plaintiff's Right to Free Exercise of Religion
### Under Missouri's Religious Freedom Restoration Act (Mo. Stat. Ann. §§ 1.302 & 307)

123.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint.

124.    By charging Plaintiff with a Level 3 grievance, requiring her to sign a contract abandoning her rights to freedom of thought, speech, religion, and association, and denigrating her personal and professional abilities, among other things, Defendants by policy and practice discriminated against Plaintiff's religious beliefs and deprived Plaintiff of her right to free exercise of religion at MSU and in the social work profession.

125.    Defendants, acting under color of state law, and according to policy and practice, have explicitly and implicitly discriminated on the basis of viewpoint and deprived Plaintiff of her clearly established right to free exercise of religion secured by Missouri's Religious Freedom Restoration Act, Mo. Stat. Ann. §§ 1.302 & 307.

126.    Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm.  She, therefore, is entitled to an award of monetary damages, including punitive damages, and equitable relief.

127.    Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including her reasonable attorneys' fees.

WHEREFORE, Plaintiff Emily Brooker respectfully requests that the Court enter judgment against Defendants Michael L. Franks, Mary Sheid, James Buford, Michael Duggan,

John L. Winston, Brian Hammons, Phyllis Washington, Cathy Smith, Michael T. Nietzel, Lola M. Butler, Anne B. Summers, Frank G. Kauffman, and Catherine L. Boling and provide Plaintiff with the following relief:

(A) Declaratory and injunctive relief expunging the Level 3 grievance and contract from Ms. Brooker's academic record and enjoining further negative action against her;

(B) Damages in an amount to be determined by the Court;

(C) Ms. Brooker's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

(D) All other relief to which Ms. Brooker may be entitled.

Respectfully submitted,

s/Kevin Theriot
KEVIN THERIOT
Missouri Bar No. 55733
Alliance Defense Fund
15192 Rosewood
Leawood, KS 66224
(913) 685–8000
(913) 685–8001—facsimile

DEE WAMPLER
Missouri Bar No. 19046
Law Offices of Dee Wampler
2974 East Battlefield
Springfield, MO 65804
(417) 882–9300
(417) 882–9310—facsimile

BENJAMIN W. BULL*
Arizona Bar No. 9940
Alliance Defense Fund
15333 N. Pima Rd., Suite 165
Scottsdale, AZ 85260
(480) 444–0020
(480) 444–0028—facsimile

(*Pro hac vice application submitted)

ATTORNEYS FOR PLAINTIFFS

## VERIFICATION OF COMPLAINT

I, Emily Brooker, a citizen of the United States and resident of the State of Missouri, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

Executed this _17_ day of _Sept._, 2006.

_Emily Brooker_
Emily Brooker